FILED
2014 Jul-25  AM 09:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **PAMELA HARPER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No.** |
| **CAROLYN W. COLVIN** ) | **4:13-cv-00808-MHH** |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 405(g), claimant Pamela Harper seeks judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of the Administrative Law Judge ("ALJ") who denied Ms. Harper's claim for a period of disability and disability insurance benefits. (Doc. 1).[1]  As discussed below, the Court finds that substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's decision.

---

[1] 42 U.S.C. § 405(g) provides, in pertinent part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

**STANDARD OF REVIEW**:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND:

On August 16, 2010, Ms. Harper applied for a period of disability and disability insurance benefits.  (Doc. 5-3, p. 10; Doc. 5-6, pp. 13, 15).

The Social Security Administration denied Ms. Harper's application on December 10, 2010.  (Doc. 5-4, p. 2; *see* Doc. 5-5, p. 2).  At Ms. Harper's request, on June 5, 2012, an ALJ conducted a hearing concerning Ms. Harper's application. (Doc. 5-3, p. 60).  Ms. Harper, an impartial medical expert, and an impartial vocational expert testified at the hearing.  (Doc. 5-3, p. 60).  At the time of her hearing, Ms. Harper was 47 years old,[2] and she had a ninth grade education. (Doc. 5-3, p. 67).[3]  Her past relevant work experience is as a fast food worker/cook. (Doc. 5-3, pp. 68-69).

On July 26, 2012, the ALJ denied Ms. Harper's request for disability benefits, concluding that Ms. Harper did not have an impairment or a combination of impairments listed in, or that medically equals one listed in, the Regulations.

---

[2] At 47 years of age, 20 C.F.R. §§ 404.1563(c) and 416.963(c) designate Ms. Harper as a "younger person."  (*See* Doc. 5-3, p. 81; Doc. 5-4, p. 2).  In some circumstances, persons between the ages of 45 and 49 are considered "more limited in their ability to adjust to other work than persons who have not attained age 45. *Id.*

[3] Ms. Harper testified that the ninth grade classes she completed were special education classes.

3

(Doc. 5-3, p. 14).  In his 12 page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled" and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (Doc. 5-3, pp. 10-11).

The ALJ found that Ms. Harper had not "engaged in substantial gainful activity since January 1, 2010, the alleged onset date."  (Doc. 5-3, p. 12).  In addition, the ALJ concluded that Ms. Harper had "the following severe impairments:  fibromyalgia (FM); generalized pain syndrome; obesity; generalized anxiety disorder (GAD); adjustment disorder, (NOS); and borderline intellectual functioning (BIF)."  (Doc. 5-3, p. 12).  The ALJ stated that, "these impairments cause more than minimal functional limitations in [Ms. Harper's] ability to perform work-related activities and that they have persisted for at least 12 months." (Doc. 5-3, p. 12).  Still, the ALJ opined that:

> The severity of [Ms. Harper's] physical impairments, considered singly and in combination, fails to meet or medically equal any impairment at 1.00ff.  Despite her allegations otherwise, [Ms. Harper] retains the capacity to ambulate effectively and to perform fine and gross movements effectively as defined at 1.00B2b and 1.00B2c, respectively, even with the myalgias and arthralgias associated with her FM and generalized pain syndrome.

(Doc. 5-3, p. 14).  The ALJ also noted that:

> [Though Ms. Harper's] full scale IQ score of 65 falls in the range generally indicative of mild mental retardation…the totality of the evidence, including [Ms. Harper's] personal and vocational histories, fails to establish the deficits in adaptive functioning necessary to support a finding [of] mental retardation. The undersigned notes that [Ms. Harper] has not alleged mental retardation and finds that borderline intellectual functioning (BIF) is more consistent with her history and presentation than even mild mental retardation.

(Doc. 5-3, p. 14). Based on these factual findings, the ALJ concluded that Ms. Harper had the residual functional capacity to perform sedentary work, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." (Doc. 5-3, pp. 16-17; 20 C.F.R. § 404.1567).

In reaching his conclusion, the ALJ considered testimony from Dr. James Anderson, the medical expert who testified at the hearing. Dr. Anderson opined that Ms. Harper's physical limitations would "limit her to light work activity with a sit/stand option." (Doc. 5-3, p. 77). Dr. Anderson also stated that Ms. Harper's physical limitations would satisfy the physical requirements in listing 12.05C should that listing be considered for mental insufficiency problems. (Doc. 5-3, p. 78). The ALJ accorded great weight to Dr. Anderson's opinion "that Dr. Go's pain

assessment and predicted level of absenteeism are inconsistent with his treatment records and with the other evidence of record." (Doc. 5-3, p. 19). The ALJ also credited Dr. Anderson's opinion that "a sit/stand option would be reasonable given [Ms. Harper's] pain syndrome but opted to give [Ms. Harper] the benefit of the doubt by limiting her to sedentary work rather than light work as Dr. Anderson opined." (Doc. 5-3, p. 19).

The ALJ also considered the results of a psychological evaluation that Dr. Mary Arnold performed. Dr. Arnold found that Ms. Harper's intellectual functioning was "in the extremely low range," noting that her FSIQ score was an overall 65. (Doc. 5-8, pp. 10-11).[4] Dr. Arnold diagnosed adjustment disorder, NOS, herniated (cervical) disk, menopausal, obesity, and high risk for diabetes. (Doc. 5-8, pp. 11-12). The ALJ gave "considerable weight to Dr. Arnold's opinion…that the overall severity of [Ms. Harper's] mental impairments is no more than moderate."[5] (Doc. 5-3, p. 19; Doc. 5-8, p. 12). The ALJ explained that this opinion is consistent with Ms. Harper's self-reported activities of daily living,

---

[4] The Court has reviewed not only the ALJ's decision, but also Ms. Harper's medical records. The Court finds that the ALJ's description of Ms. Harper's medical evaluations is accurate. In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying records to illustrate that there is no discrepancy between the two.

[5] This information was taken from Ms. Harper's Axis V Global Assessment of Functioning (GAF) score of 57, which corresponds to moderate functional limitations. (Doc. 5-8, p. 12).

Dr. Arnold's observations, and Ms. Harper's mental health status examination (MSE) results. (Doc. 5-3, p. 19; Doc. 5-8, pp. 9-10).

The ALJ reviewed the results of consultative examiner Dr. Beau Bagley. (Doc. 5-3, p. 13). Dr. Bagley recommended that Ms. Harper see her primary care practitioner for blood pressure evaluation. (Doc. 5-3, p. 13). He also noted that Ms. Harper exhibited crepitus on ROM of the knees in addition to swelling, but no erythema. (Doc. 5-3, p. 13).

The ALJ also considered the June 5, 2012 hearing testimony from Dr. David Head, a vocational expert. Dr. Head testified that all of Ms. Harper's past relevant work is classified as light and unskilled or medium and unskilled. (Doc. 5-3, p. 78). Consequently, Ms. Harper has no transferrable skills. (Doc. 5-3, p. 78). Additionally, Dr. Head testified that Ms. Harper could not perform her past jobs in the fast food industry. (Doc. 5-3, p. 79). Dr. Head opined that Ms. Harper could perform "sedentary, unskilled, entry level jobs" which are present in the national economy. (Doc. 5-3, p. 80).

The ALJ acknowledged the Social Security Questionnaire completed by Ms. Harper's treating physician, Dr. Go, but the ALJ gave little to no weight to these findings. (Doc. 5-3, p. 19; Doc. 5-8, pp. 93-95). The ALJ afforded little to no weight to Dr. Go's opinion because "Dr. Go identified only two conditions as

causing what he characterized as moderately severe pain." (Doc. 5-3, p. 19). One of the two conditions, bilateral knee OA, is contradicted by the medical evidence of record. (Doc. 5-3, p. 19). The second condition, FM, was reported as "less than compelling overall and inconsistent with the severity of limitation/pain indicated." (Doc. 5-3, pp. 19-20).[6]

Ultimately, the ALJ found that Ms. Harper "is unable to perform any past relevant work." (Doc. 5-3, p. 20). The ALJ reasoned that:

> [Ms. Harper] has past relevant work as a fast food worker/cook. The vocational expert classified this work as unskilled, light work, according to the *Dictionary of Occupational Titles* (DOT) except for the work performed as a fry cook which would be classified as medium, unskilled work. Since [Ms. Harper] retains the residual functional capacity to perform a limited range of sedentary work, she is unable to perform past relevant work.

(Doc. 5-3, p. 20). Consequently, the ALJ examined whether Ms. Harper was capable of performing other jobs that exist in significant numbers in the national economy. The ALJ found that, "considering [Ms. Harper's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant

---

[6] The ALJ also noted the opinions of Ms. Harper's "third party informant," but he did not give great weight to these opinions because of difficulties involved in accurately determining activities of daily living limitations objectively with any reasonable degree of certainty and because the record as a whole makes such a determination challenging in light of the various other factors that may have caused such activities of daily living limitations. (Doc. 5-3, p. 20).

numbers in the national economy that [Ms. Harper] can perform." (Doc. 5-3, p. 20). Accordingly, the ALJ noted the response of the vocational expert who stated:

> Given all of these factors, the individual would be able to perform the requirements of such representative unskilled, sedentary occupations as bench and table workers (DOT #715.684-026, SVP 2) with an estimated 1750 jobs in the state of Alabama and 85,000 jobs nationwide; assembly jobs (DOT #725.684-018, SVP 2) with an estimated 950 jobs statewide and 42,000 jobs nationally; inspectors (DOT #715.687-058, SVP 2) with an estimated 800 jobs in the state and 38,000 nationally.

(Doc. 5-3, p. 21). Therefore, the ALJ determined that Ms. Harper "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Doc. 5-3, p. 21).

On March 23, 2013, the Appeals Council refused to review the ALJ's decision, making it the final decision of the Commissioner. (Doc. 5-3, p. 2). Having exhausted all administrative remedies, Ms. Harper filed this action for judicial review pursuant to §205(g) of the Social Security Act. *See* 42 U.S.C. §405(g).

**ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for

9

a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Here, in assessing whether Ms. Harper is disabled, the ALJ found that Ms. Harper's fibromyalgia, generalized pain syndrome, obesity, generalized anxiety disorder, adjustment disorder, NOS, and borderline intellectual functioning constitute severe physical/mental impairments that "cause [Ms. Harper] more than minimal functional limitations in [her] ability to perform work-related activities

and that they have persisted for at least 12 months." (Doc. 5-3, p. 12). Nevertheless, the ALJ concluded that Ms. Harper is not disabled because she is able to perform jobs that exist in significant numbers in the national economy despite her impairments. The ALJ based his decision on the following substantial evidence: Dr. Anderson's opinion that Ms. Harper is capable of performing work at the light work activity level with a sit/stand option; Dr. Arnold's finding that the severity of Ms. Harper's mental impairments was no more than moderate and that the results of Ms. Harper's MSE results bolstered that determination; and Dr. Head's opinion that Ms. Harper could perform "sedentary, unskilled, entry level jobs" which are present in significant numbers in the national economy.

Ms. Harper argues that despite this substantial evidence, she is entitled to relief from the ALJ's decision because his finding that she did not meet listing 12.05C is unsupported by the evidence.[7] (Doc. 10, p. 5). This contention is without merit.

The applicable listing states as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence

---

[7] The language of Regulation 12.05C has changed since Ms. Harper filed her application. The Court uses the regulatory language in place when Ms. Harper applied for benefits.

> demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. § 404 app. 1, § 12.05. "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

Ms. Harper argues only that she can satisfy 12.05C. Consequently, 12.05C is the only Listing that the Court will address. The requirements of 12.05C include:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

20 C.F.R. § 404app. 1, § 12.05C. In *Crayton*, the Eleventh Circuit explained:

> Generally, the claimant meets the criteria for presumptive disability…under section 12.05(c) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work. *See Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (a valid IQ score need not be conclusive of mental retardation, where the IQ score is

>   inconsistent with other evidence in the record concerning
>   the claimant's daily activities and behavior).

*Id.* at 1219-20.  To meet a mental retardation Listing, the claimant must have significant subaverage intelligence accompanied by "significant limitations in adaptive functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed. text revision 2000) (DSM–IV); *See* Doc. 16, p. 6.  Further, "[m]ental [r]etardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (4th ed. text revision 2000) (DSM–IV).

Ms. Harper's overall IQ test score was a 65; however, the ALJ found that Ms. Harper does not have deficits in adaptive behavior.  This conclusion rests on sound legal footing, and it is supported by substantial evidence.  "[A]daptive activities" include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. § 404 app. 1, § 12.00C(1).  The ALJ noted that Ms. Harper's "academic career was characterized by very poor reading skills, special education services, and early elopement from school," (Doc. 5-3, p. 16); however, the ALJ also found that once Ms. Harper left school, she "led an independent and productive life," having

13

"married, reared a family, worked successfully outside the home, obtained a driver's license, and cared for her ill parents and a disabled spouse." (Doc. 5-3, p. 16). The ALJ also explained that Ms. Harper "handles her own financial affairs, performs a variety of household chores, shops, and is able to interact appropriately with others when necessary." (Doc. 5-3, p. 16). Based on this information, the ALJ concluded that the criteria for Listing 12.05 are not met and that it was not necessary to consider the validity of the IQ test score. (Doc. 5-3, p. 16).

The record indicates that Ms. Harper has a valid driver's license (Doc. 5-3, p. 66; Doc. 5-8, p. 9), drives (Doc. 5-3, p. 66; Doc. 5-7, p. 27; Doc. 5-8, p. 9), shops (Doc. 5-7, pp. 27, 35; Doc. 5-8, p. 11), pays bills (Doc. 5-7, p. 27; Doc. 5-8, p. 11), writes checks (Doc. 5-8, p. 11), cooks meals (Doc. 5-7, pp. 26, 33, 34; Doc. 5-8, p. 11), performs household chores (Doc. 5-7, pp. 26, 33, 34; Doc. 5-8, pp. 4, 11), married and raised two children (Doc. 5-3, p. 66; Doc. 5-7, p. 33; Doc. 5-8, p. 9), worked for over 11 years (Doc. 5-7, p. 18), independently attends to her personal needs (Doc. 5-8, pp. 4, 11), and cares for her disabled husband (Doc. 5-7, p. 33). She also served as caretaker for both of her parents. (Doc. 5-8, pp. 9, 11). Initially, Ms. Harper did not seek disability benefits on the basis of mental retardation at all. Rather, Ms. Harper alleged that she was entitled to benefits because her arthritis, depression, herniated disc in neck, and nerves limit her ability to work. (Doc. 5-7, p. 17).

Without "significant limitations in adaptive functioning" a diagnosis of mental retardation under 12.05C is improper. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (4th ed. text revision 2000) (DSM–IV). The ALJ's finding that Ms. Harper is not disabled rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

**CONCLUSION**:

Accordingly, the Court concludes the ALJ's decision is based upon substantial evidence and is consistent with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. The Court will enter a separate order consistent with this memorandum of opinion.

**DONE** and **ORDERED** this 24th day of July, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE